Good morning. When your case is called, if you represent the appellant, let us know how much time you need for rebuttal, even if you've already advised the clerk. And you may call the first case. Case number 1536-21. Right Now Recycling v. Ford Motor Credit. Have the meeting at all. Oral argument not to proceed. 15 minutes per side. Mr. Pacheco for the appellant. May it please the court. Good morning, your honors. Brian Pacheco and Mark Harns on behalf of the City of Blue Ash. I'd like to reserve four minutes for oral argument. Thank you. Below, your honors, the District Court erred in denying Blue Ash's motion for summary judgment and in granting Ford Motor Credit's motion for summary judgment. Fundamentally, the District Court misapplied the unambiguous terms of a one-sentence contract under which Ford Motor Credit agreed to indemnify and hold Blue Ash harmless for any liability or claim made against Blue Ash arising out of Blue Ash releasing Right Now's trucks to Ford Motor Credit. So it's a one-sentence, unambiguous contract. One sentence that we have to read narrowly, right? No, your honor. I don't believe you do. It's not under state law we strictly construe these things. That's if you have to get through the rules of construction. These are plain language. And under the Goodyear case that you were recently a part of in July, the court looked at a cross-indemnification in that case. And you say you've got to look at all the words and give effect to all the provisions. Sure, but this isn't like a Chevron test. I mean, this is sort of an attitude we bring to the construction altogether, not a second step in the event of ambiguity. Again, your honor, respectfully, as I read Goodyear and I read Ohio law, you don't Which Goodyear case was this? This was Goodyear v. Loral. I can give you the That's okay. I can give you the Yeah, I think, okay. Mr. Bergeron's here for all those. I'm sure he'll want to talk. But the point is that I don't believe you get to those rules of construction when you have plain language. Okay, well, we can divide this for now. Thank you, your honor. The district court held that Ford did not have an obligation to indemnify Blue Ash because right now's procedural due process claim against Blue Ash was not a claim or liability that arose out of the release of the trucks. But rather than interpret any claim or liability as written, the district court construed that phrase to mean any claim or liability except right now's due process claim or right now's claim for money damages against Blue Ash. In doing so The procedural due process was Blue Ash's failure to have some sort of notice in a hearing before it released the trucks. That's what the district court held, yes, sir. Okay, so wouldn't it be extremely odd to make Ford motor credit indemnify you for your own omission before you hand over the trucks? No, your honor, not in this case. First of all, it must be remembered that right now in the district court and the magistrate all found that the relevant time for its damages was the entire time Ford held the trucks. Blue Ash, there was no damages ever sought for the December to February time. Right, but the culpable act is the absence or omission, is the absence of a notice or hearing. That's the nature of the procedural due process claim. And that's something that the city does before it releases the trucks. Why would Ford be indemnifying you for your own omission before you give the trucks to Ford? It just doesn't seem to make any sense. Two responses. One, this is a procedural due process claim that requires a property deprivation. So the district court made the error, in our view, of divorcing the element of the property deprivation. Because there is no due process claim without the property deprivation element. This court held that in Campbell in 1984. But I could imagine if you give the trucks to Ford and then Ford cares for them in some negligent way and they have an accident or the trucks get scratched or something like that. That's Ford's fault. It makes sense. Let's put the risk on Ford to make sure that doesn't happen. It just doesn't seem to make any sense at all to say that Ford is going to be liable for something that Ford had zero control of, was already over and done with before it gets the trucks. I mean, I've never seen... Has there ever been an indemnity case where the... I understand release is but for, but the truly culpable act already happened before the agreement, basically. I think that's one of the errors that the district court made. To say that the error here was only blue ashes. For a couple of reasons. Number one, you have to have the... Again, I'm sorry to beat the horse a bit. You have to have the property deprivation. And the property deprivation only occurred here when the trucks were in Ford's possession. You guys released the trucks. Again, it's something that you did, really. Well, because at the behest of Ford, saying to us on February 15th, when the assistant district attorney says to Blue Ash, you don't need to keep the trucks anymore, we're not going to forfeit them. We talked to Ford. Ford sends us the next day, February 16th, the seized property releases and the hold harmless agreements. The next day, Ford gets the trucks. Now, that's not Ford simply acting as an innocent, if you will, actor. And I don't mean that in a legal sense. I mean that more in an everyday vernacular sense. That's not Ford acting as an innocent party. That's Ford coming in and saying, we want the trucks as against the owner. I'll use that term. We're the lien holder. We want those trucks. They give a release. What other situation, Your Honor, would this release be given for? Now, they will come up and probably pose a situation, well, if the vehicles are damaged in route, we're saying Blue Ash is not responsible for that. But by the time whoever Ford's agent signs off on the release of the trucks, that's it. They're in Ford's possession. That's Ford's deal. So when else would this – I'm sorry, Your Honor. It's okay. I think I've sort of expressed my concern. If I may, when else would this release apply? What other situation would there be? If Ford takes the trucks and they crash the trucks driving over to Ford's lot, you know, somebody backs into the trucks at Ford's lot, that kind of thing. I mean, that makes all the sense in the world. This doesn't, frankly. Well, but, Your Honor, who else would be making a claim for the release of the trucks? The owner. Right. In this case, right now. From a practical standpoint, what happened at Ford Credit and the owner, the recycling company? Did Ford Credit just say, well, we're going to take them and you can't pay at all for anything like that? Yes. Effectively, Your Honor, that's what happened, as I understand Your Honor's question. Yes, they came in on February 15th. They talked to the Blue Ash Police Department on February 15th. On February 16th, Ford submitted these seized property releases and these hold harmless agreements, and February 17th, Blue Ash released the trucks to Ford. And Ford kept the trucks from February 17th until May 4th, Judge Kethledge. The other thing, too, that I think... Ford kept them for a little while, and then what happened to them? Ford didn't release the vehicles, and I think this is important, Judge Kethledge, back to the fencing that we're doing a bit on this. On May 2nd, right now, sues Ford and state court for replevant for release of the trucks. Then, and only then, two days later, does Ford release the trucks to right now. More importantly, I sent a letter to Ford on April 14th saying, you can go ahead and release the trucks, and they waited another three weeks. So I do think there is some issue of Ford culpability, particularly when you look at a procedural due process. Again, I'm sorry, I don't want to continue to reiterate points that the court has moved past, but I do think it's important that without a property deprivation, you don't have a due process claim, and I submit that if you're reading a due process claim into this release, you are reading into this release language that's not there, and I think that violates these courts' dictates in Ohio law as to how you interpret the plain language of an agreement, because if this situation doesn't apply in this release, to this release rather, then I don't know when this release applies, and I know the court has said, well, if they're endangered en route, but that wouldn't apply anyway once they sign off on taking the trucks. I mean, you're saying there would not be indemnification if Ford crashes the trucks on the way to Ford's lot? No, I'm saying there could be, but that's not... That's where it applies. That's one situation, but it says any liability or claim, Your Honor. It doesn't say just liability or claim arising on the way from Blue Ash to Automobile Recovery's lot. So right now, did they get the trucks back in the end here? They did, Your Honor, after Ford gave them back, after right now... What are the damages here that brings this case to us? What are their damages? I mean, is there really a lot of damages in this case? Trucks get taken away for a few weeks. There was a settlement between Blue Ash and right now, Your Honor. There was a significant amount to... Fair use of the trucks for however long they were held. That was one of the... Sorry, Judge, that was one of the theories below of their damage, yes. And there's enough, Your Honor, to be in front of this court to continue the process, particularly when, again, Your Honor... The jurisdictional amount is okay in this case? The jurisdictional amount is okay in this case. Your Honor, if I may go back to it, one other thing that's important. I see I have a minute left on my initial 11 minutes. I think it's important to note that the only damages right now sought were for the time Ford held the vehicles. And Ford continued to hold the vehicles for three weeks after Blue Ash said release the vehicles to right now. And Ford didn't release the vehicles until right now sued them for... And they sued them for replevin. This issue was about the trucks. You can talk about notice, and you can talk about opportunity to be heard, and you can talk about the district court's finding where the district court said you didn't give them notice and you didn't give them opportunity to be heard. But none of that matters, I submit, without the property that they were deprived of. And the only property that they were deprived of were the trucks. And the trucks were not in Blue Ash's possession, and Blue Ash was never found liable for holding the trucks. Let's be very clear. The district court didn't say that either. The district court said at page 3141 at the page ID in the district court's decision that the relevant time frame was February forward. That's the entire time Ford held the trucks, not any of the time Blue Ash held the trucks. And again, without the property deprivation, you don't have a procedural due process. Unless the court has any other questions, I see my time is up. Thank you. Morning, Your Honors. May it please the court. It's undisputed here that the violation was the city's failure to provide notice  They haven't appealed that. They had the opportunity to. And they have never reconciled their position as to what this indemnity agreement provides with the fact that they had a policy, a written policy in place, that precipitated the unconstitutional action. And the reason is, getting back to Judge Kethlett's questions, they cannot reconcile that from a temporal perspective with the indemnity agreement. And it is a very unusual case, and I've never seen Reconcile what? What are we talking about? The policy with the agreement? Well, the policy was, that's what the district court and the magistrate found was the basis for the unconstitutional action. And their witnesses said, we were just following the policy. So when you talk about, what does this arise from? The policy, in other words, was one that did not provide for any notice or hearing or releasing stuff to creditors. Correct. Did Blue Ash have this in its possession, or who had it at the time that they turned it over to you? The trucks, Your Honor? Yes. Yes, the city already had them. I mean, that's the other, they talk about, well, there has to be a deprivation. Well, the city had already been depriving right now of the vehicles since December when they seized them, in addition to all sorts of other property that they took from right now. So the city had it in its possession. And their point about, well, Ford was holding it for three months. Well, they told us we couldn't release it to them. I mean, they were the ones that said, they initially said in December, don't talk to right now, don't communicate with the leaseholder here. And then afterwards, they would never give us the all clear until mid-April about saying that they're relinquishing their rights. And they knew, based on what they made us sign, that we couldn't release those without jeopardizing our innocent lien holder status. So to say that Ford is responsible for this is a little bit counterfactual. And I think if you look at his point about Ford holding it for a few weeks thereafter, I mean, they right now sued us for that, and the court rejected that. And no one's appealed. So, I mean, can you spell that out? I was wondering if there was a separate claim against Ford, not an indemnity claim, but a negligence claim that, hey, you know, we asked for these things back, and you guys don't do anything for three weeks, and we have liability for that time, and you caused that. Yes, that was part of right now's breach of contract claim against Ford, which Part of a breach of contract? Breach of the lease agreement. There was a lease agreement between Ford And that's different than the claim before us now, the indemnity claim, correct? Correct, correct. And what happened to that claim? The district court ruled for us on summary judgment and rejected that. That's not before us. Correct, correct. Right now it did not appeal. And, Your Honor, Judge Kethledge, you also mentioned the indemnity agreements are strictly construed. I mean, the only response that I saw to that in the reply brief was a 1977 case that also said indemnity agreements are strictly construed. I think that's a well-settled principle of Ohio law, and particularly when, you know, the normal indemnity agreement is seeking to cover, to protect the indemnity from the indemnitor's actions. This is a situation where the city is trying to insulate itself from its own unconstitutional actions, and that raises a host of policy concerns as well because we don't want to encourage cities to take unconstitutional actions. But it was all based on their turning these trucks over to you, right? It was based, and this is... They wouldn't have done it except that you claimed they were supposed to have them, right? Well, Your Honor, what both the district court and the magistrate found was that the harm and the root cause of the problem was they're not providing right now notice and opportunity to be heard prior to releasing. So they made it... That's all part of one big transaction. They wouldn't have released them except they had to go through and get the trucks and turn them over to you, right? Well, I mean, Your Honor, if they had simply provided the notice and the opportunity to be heard, then there'd be no liability for anyone because right now did not prevail on its claims against Ford, and right now would have had no constitutional claim against the city, which was its only claim against the city. So it was that ultimate... that predicate not providing notice that was the root cause of the harm, which is what this whole thing arises from. And if you... But one of the root causes of the harm is turn them over to your client. If they hadn't turned them over to your client, there wouldn't have been any harm at all, right? Well, I'm not sure that's true, Your Honor, because, you know, at some point the city had to provide them due process since it was depriving them of the vehicles. So they would have had an option if they had wanted to pursue forfeiture, for instance, they would have had to provide due process. And maybe they do, maybe they don't. But they can't just hold them in perpetuity without providing some basic procedural due process protections. So the fact that it was being transferred to Ford is obviously why we're here today, but it's not as if that's the only reason that the city would have due process obligations. So the word arising out of, I mean, that's where that term, I mean, that could be normally read pretty broadly, I guess, right? I mean, it does, as a matter of sort of ordinary conversation, this does sort of arise out of the release. Well, I mean, I guess my point is you do, I guess, have to rely on this strict construction canon, I guess, for these things in Ohio. I mean, I don't, that's not the only basis for the argument, Your Honor. And if you look at the language, it's the releasing of the vehicles to automobile recovery, which is the third-party vendor that Ford retained here. So, I mean, that's an action, the releasing of the vehicles to automobile recovery and along the lines of what you were saying. I mean, this seems to contemplate if the trucks get in an accident en route to being obtained by automobile recovery. So it's not, I mean, this agreement could have been much broader, and I'm sure the court has seen indemnity agreements that cover everything under the sun. This is much more narrowly. Can you remind me, what was the full sentence in which that arising out of? Yes, Your Honor, it is any claim made against you arising out of your releasing of this vehicle to automobile recovery. So it's the act of, I mean, I understand what you're saying now. I mean, one could read that perhaps as saying, you know, damages resulting from sort of the process of the release as opposed to anything related to it. Yeah, but if you look at, Your Honor, if you go back to what the magistrate found and then what the district court found, which was both of them found, and it was at 2947 and then 3141, a page ID, that the injury arose from the lack of notice and the opportunity to be heard. And, in fact, when the city made the argument before the district judge vis-a-vis right now and said, wait, wait, you're seeking recovery for three months of time when Ford held the vehicles, the district judge rejected that and said, no, no, no, they're seeking damages based on the injury, the unconstitutional failure to provide process. And to your point earlier, I mean, I don't know what the damages should be from that. I mean, I think there is a fair argument that they should be nominal at best. But they settled, and so we don't have any adjudication of what those damages actually were, what was appropriate. But certainly if we decide against you, then is the amount that they settled with the owners, is that the amount you'd have to pay, or would that go back to a fact finder again? Your Honor, I presume it would have to go back to a fact finder. I mean, there is the cap on the indemnity in the agreement, which is to the value of the vehicles. What were these vehicles worth? I have no idea. Your Honor, I believe the amount owing on both the vehicles combined was about $70,000. For both of them? Correct, correct. You don't know the amount of the settlement? Your Honor, I think I do, but it was their settlement. We weren't a party to it. So I think they'd have to be the one that would answer that question. I also don't know if there's a confidentiality provision in it, Your Honor. That's not in the record. It's not in the record. No, please stop nodding. I'm sorry, it's distracting. I'm sorry. So, I mean, what is your position then about, I mean, this is a diversity case, is that right? Well, I believe it was removed initially on diversity, and then once the right now added the claim against the city that was a constitutional claim. So there was supplemental jurisdiction that the district court had here? Well, they had federal question jurisdiction initially, I mean, once the constitutional claim was added. There was federal question jurisdiction over the claim by right now against the city, right? Correct, correct. And this, there must have been supplement, it's either supplemental jurisdiction. It was supplemental jurisdiction, Your Honor. The case ended because after the cross motions for summary judgment, the city settled out on the remaining claims, and then they appealed this one. So, I mean, this is embarrassing to have to ask this. Do we have a jurisdictional amount that needs to be satisfied, I remember, for supplemental? I don't believe so. Probably not. I don't believe so, Your Honor. So, Your Honor, unless there's any further questions, we certainly request that, I mean, the magistrate and the district court analyze this thoroughly. We respectfully request the court affirm. Thank you. Thank you, Your Honor. Just to be clear. I'm still not clear how it is that the jurisdictional amount is here. Well, it's in the record that the vehicles were purchased for $98,000 combined. Well, that still doesn't speak to the damages that are in these claims. Well, you originally had federal question jurisdiction, I think, as everybody agreed. Over, over, over, I'm sorry. I mean, it would be over the right now's claim against the city. But this is, right now what we have in front of us is a breach of contract case where it looks like the damages are way less, probably, than the jurisdictional amount. Maybe it's supplemental jurisdiction. I don't know. I think there's, Your Honor, at least supplemental jurisdiction because the value of the vehicle is in the record, and that's in the, I don't remember the record site now, I apologize, but it's in Ford's answer to our cross-claim as to the amount of the vehicles. But, I mean, the total value of the vehicles, as Judge Clay points out, I mean, that's not really a measure of the damages for taking them for a month or whatever it was. If I may also, Your Honor, Ohio law holds that as part of an indemnification obligation, the four would also have the obligation not only to pay our attorney's fees in responding to right now, but also in prosecuting this case. And so that would also, that would in addition take it over plus the value of the vehicles. Your Honor, back to any liability or claim. So it's any, Mr. Bergeron said it was any claim, but it's also any liability or claim in that. So any liability, in our view, means any liability. But, I mean, Mr. Bergeron's point was there is some language immediately after that which qualifies it, which, you know, why couldn't one read that to mean the act of releasing it, essentially? I mean, you know, the damages have to be bound up in that and not just generally, if you follow me. I do, Your Honor. But arising, I submit that that's a tweak on arising out of that isn't what arising out of means. No, he's not talking about arising out of. He's limiting the thing that it must arise out of, namely the process of releasing itself, as opposed to releasing being, you know, just a but-for cause. But arising out of doesn't, arising out of under Ohio law, at least as I understand the case, doesn't go to a but-for. It's just a causal connection. Okay. Here there is a causal connection. And that's at least the case that we've cited in our brief, how arising out of is defined. Your Honor, the Goodyear case that I was talking about that you were on is decided on July 30th. It's case number 14-4078, 2015, U.S. Appalachians, 13448. The court there was construing the cross-indemnification provisions between Goodyear and Loral, and the court did not indicate that there were rules of construction of indemnity, at least as it applied that case. The court just said that the role was to give effect to the intent of the parties and that you were to take the provisions of the contract as a whole and derive the party's intent from the plain meaning. Interestingly, Your Honor, it's also the magistrate, when Blue Ash moved to amend its cross-claim to add a claim for indemnity, the magistrate originally found that the indemnification claim was proper under the plain language of the contract. Now, I know that's not what the magistrate ruled later, and I know that's not what the district court held later, but there were no fact changes, Your Honor, I submit, that should have made any difference. I think Judge Seiler has hit on the correct damage point here. The damage point was never while Blue Ash held the vehicles. We were always lawful. They were taken pursuant to a lawful search warrant, and there was never an issue with Blue Ash's time that it held the vehicles. The only damage period here was February on when Ford possessed the vehicles and after Blue Ash asked Ford to give the vehicles back. I see my time is up. Unless there are any questions, I'm happy to answer. Thank you. Thank you very much. Thank you. Case is submitted.